**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Larry Donald VERSE,**
**Defendant-Appellant.**

**No. 73–1301.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1973.

Decided Dec. 27, 1973.

Dennis E. Zahn, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., Thomas L. Bose, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and GRANT Senior District Judge.*

SPRECHER, Circuit Judge.

Defendant Larry Donald Verse was indicted for assaulting an employee of a United States penal institution in violation of 18 U.S.C. §§ 111 and 1114. Having been found guilty by a jury, he was sentenced to two years' imprisonment to run consecutive to a current sentence being served.

Defendant appealed on three grounds: (1) erroneous denial of defendant's motion for a bill of particulars; (2) erroneous denial of parts of defendant's motion for discovery and inspection; and (3) prejudicial conduct of the prosecutor in cross-examination and in final argument to the jury.

Defendant contended that the indictment did not apprise him "of the time, place or the acts complained of" and that it was error to deny his motion for particulars in that regard. Rule 7(f) Fed.R.Crim.P. provides that the court "may direct the filing of a bill of particulars". The granting of a bill of particulars is in the discretion of the trial judge. United States v. Rimanich, 422 F.2d 817 (7th Cir. 1970).

The indictment charged in part that "on or about the 31st day of March, 1972, in the Southern District of Indiana, . . . [defendant] wilfully and knowingly did forcibly assault, resist, oppose and interfere with Donald P. Turpen, an employee of the United States penal institution at Terre Haute, Indiana, knowing him to be such employee, while the said Donald P. Turpen was engaged in the performance of his official duty." The indictment alleged the date, the name of the victim and the fact that he was an employee on duty of the federal penitentiary at Terre Haute, where the defendant was then an inmate. The description of the acts complained of was also adequate. See Cunningham v. United States, 356 F.2d 454, 455–456 (5th Cir. 1966). With such specificity in the indictment, we cannot say that the district court abused its discretion in denying the motion for further particulars.

Defendant next contended that the district court erred in not granting all of the discovery sought by defendant. Actually, the court granted a sizeable portion of the discovery requested and framed his denial in large part upon the language of Rule 16(b) Fed.R.Crim.P. which expressly excludes certain categories of discovery from the defendant. The court also denied the request for the

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

names and addresses of potential government witnesses. "A defendant still has no absolute right to obtain the names of government witnesses in advance of trial, except in capital cases." 8 Moore's Federal Practice ¶ 16.03 [3], at 16–25 (2nd ed.). The trial court did not abuse its discretion and did not prejudicially err in any of its rulings. United States v. Pope, 409 F.2d 371, 374 (7th Cir. 1969).

█ Finally, defendant complained of the prosecutor's conduct in cross-examination and final argument. In cross-examining some of defendant's inmate witnesses, the prosecutor asked whether they had been coached by the defendant. This was followed up by the introduction of government Exhibit 2, which defendant identified as "written for me by another inmate, what they would call a jailhouse lawyer" (Tr. 56) and which contained a statement of defendant's version of the incident leading to his indictment (Tr. 45–46). One of the defense inmate witnesses testified (Tr. 44):

"I found that in the legal room, and I brought it to the defendant, asked him about it, defendant. When I told him I would be a witness, I said that this doesn't pertain to me, because I did not see the initial confrontation."

Inasmuch as other inmate witnesses testified to the incident in almost the exact verbiage of government Exhibit 2, the prosecutor was justified in cross-examining them as to whether they had seen the paper or been coached by the defendant.

█ Upon final argument, the prosecutor urged the jury to believe the government witnesses. This did not constitute a personal vouching for the credibility of the witnesses nor an indication of the prosecutor's personal belief or opinion as to guilt of the defendant and was not improper.

The conviction is affirmed.

Affirmed.

SWYGERT, Chief Judge (dissenting).

The majority holds that the Government counsel was justified in cross-examining defendant's inmate witnesses as to whether they had been coached by the defendant. Assuming that inquiry into the matter of coaching was justified, I would find that the manner and form of questioning by which Government counsel conducted his inquiry was, under the circumstances, highly prejudicial and deprived defendant of a fair trial. Accordingly, I would reverse.

This criminal prosecution arose out of a physical confrontation between the defendant, an inmate in the United States penal institution at Terre Haute, Indiana, and a prison guard at that institution. At trial the Government presented testimony of prison employees which placed responsibility for provocation of the assault with the defendant. The defendant countered with testimony from prison inmates to the effect that the prison guard provoked and assaulted the defendant, with defendant's actions amounting to self-defense. There was eyewitness testimony on both sides, each with different versions of the same event, and as Government counsel so aptly stated in final argument to the jury, "this simply boils down to who do you believe?" The entire resolution of the case turned on the credibility of the witnesses. In attempting to destroy the credibility of the defendant's witnesses, the method and form of interrogation utilized by Government counsel overstepped the bounds of propriety.

Government counsel embarked on his course of prejudicial conduct during cross-examination of the defendant's first witness, Robert Carter. There had been no evidence presented that any of the defense witnesses had been coached when the prosecuting attorney asked Carter the following questions:

Q. Isn't it true that Mr. Verse told you the facts that you are supposed to testify here today, and that what you are telling is what

Verse—what you are telling the jury is what Mr. Verse has told you to tell them?

A. I am just telling, sir, what I seen.

Q. And this is not what Mr. Verse told you to tell the jury?

A. Mr. Verse has not told me to say anything.

Q. Isn't it true that Verse circulated a memorandum to you, which on the memorandum he told you what you were supposed to testify to, the facts you are supposed to testify to?

A. I have not seen any such paper, sir.

The second defense witness, John Sullivan, likewise did not escape Government counsel's assertion of coaching. On cross-examination Sullivan was asked:

Q. Now isn't it true that Mr. Verse, over here, has gotten together with you, coached you?

MR. ZAHN: I am going to object to this line of questioning. The man has testified as to why he is here, how he came to be here. He's obviously arguing with the witness, trying to prejudice this jury.

THE COURT: I assume you intend to follow it through, do you not, with something—

MR. BOSE: Yes, I do.

THE COURT: The objection is overruled, then, based upon the offer of counsel.

Q. (By Mr. Bose) Isn't it true that Verse has gotten together with you and told you exactly what you were supposed to say today, such as those details that you were describing in your direct examination?

A. No, that isn't true.

Q. Isn't it true, Mr. Verse circulated to you a memorandum showing what you were supposed to testify to today?

A. No, sir, that's not true.

The defendant's counsel objected to the questions; however, the court overruled the objections based on Government counsel's representation that he would follow up with evidence of coaching of the witnesses. Although Government counsel charged that both Carter and Sullivan were coached, he did not immediately follow his contentions with the necessary evidence of coaching. Rather, he allowed the allegation of coaching to remain unanswered throughout the testimony of Carter, Sullivan, and the third defense witness, Robert Yates. It was on cross-examination of the fourth defense witness, that Government counsel presented the alleged evidence of coaching. The Assistant United States Attorney introduced into evidence Exhibit 2 which was a letter prepared for the defendant by a jailhouse lawyer containing a statement of the events surrounding the confrontation between the defendant and the prison guard.[1] The Government referred to Exhibit 2 as a "script" and although counsel had no direct evidence of coaching he contended that the circumstantial evidence was sufficiently strong so as to justify his cross-examination. The circumstantial evidence, which it is asserted justifies the inference that the witnesses were coached, is the claimed identity between the details in the testimony of two of the inmate witnesses and the details in the asserted script. The majority accepts this contention and finds that:

Inasmuch as other inmate witnesses testified to the incident in almost the exact verbiage of government Exhibit 2, the prosecutor was justified in

---

1. The letter had been found in the possession of the fourth defense witness, George Anderson. There was no evidence that the letter had ever been in the possession of the other defense witnesses. Anderson's testimony related to events that occurred after the assault and in no way pertained to the events detailed in the letter.

cross-examining them as to whether they had seen the paper or been coached by the defendant.

Although I do not dispute that the circumstantial evidence may have justified an inquiry as to whether the witnesses had been coached,[2] the nature of the evidence of coaching was purely circumstantial and as such did not justify the form or method of cross-examination utilized by Government counsel. The prejudicial impact on the jury of a question in the form, "Isn't it true you were told what to say?" is far greater than if the question were simply put, "Were you told what to say?" The first question suggests to the jury that Government counsel is aware of or has personal knowledge that the witnesses were in fact coached. Indeed, under the circumstances, the statement, "Isn't it true that you were coached?" suggests much more than its worth for it is, at best, grounded on circumstantial evidence of coaching; the prosecutor has no direct evidence of coaching; he has no knowledge of coaching. Yet, his assertive question suggests that he does possess knowledge of coaching of witnesses; it is an unfair question.

In view of the potential for undue prejudice the Government was not justified in asserting the existence of activities it could not possibly prove directly and could only hope to prove inferentially through the use of circumstantial evidence. Accordingly, I cannot escape the conclusion that Government counsel's form of cross-examination was highly improper and most prejudicial. This criminal prosecution presented a close question for the jury's decision, namely, whether the jury should believe the Government eyewitness testimony or the testimony of the prison inmates. As previously noted, the resolution of this action turned solely on the issue of credibility of witnesses. It cannot be gainsaid that the scales of credibility were already tipped against the inmates before they so much as uttered a word, while in contradistinction, the jury no doubt viewed the prosecutor as a symbol of integrity and fairness whose every action was to be trusted. Under such conditions it is the duty of Government counsel to prosecute with zeal and vigor, but to do so in a fair manner and method and to refrain from unfair means. As the Supreme Court has said:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

If the prosecutor fails to execute his duty of vigorous but fair prosecution, the end result will be that the "improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." 295 U.S. at 88, 55 S.Ct. at 633. In a close case such as here prejudice to the outcome of the case is so "highly probable that we are not justified in assuming its non-existence." Berger v. United States, 295 U.S. at 89, 55 S.Ct. at 633. Accordingly, I would award the defendant a new trial.

2. After a review of the testimony of the witnesses and the contents of the alleged script, I am not convinced that the details of the script and the inmate testimony are remarkably similar or in "exact verbiage."