**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Blackburn JACKSON,
Defendant-Appellee.**

No. 74–1488.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1974.

Decided Jan. 14, 1975.

Rehearing and Rehearing En Banc
Denied April 15, 1975.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Thomas H. Ramsey, Chicago, Ill., Terence F. MacCarthy, Federal Defender Program, Chicago, Ill., for defendant-appellee.

Before HASTIE * and CASTLE, Senior Circuit Judges, and FAIRCHILD, Circuit Judge.

CASTLE, Senior Circuit Judge.

The Government appeals under 18 U.S.C. § 3731 from a judgment of the district court dismissing its indictment of defendant Blackburn Jackson because of

---

* Senior United States Circuit Judge William H. Hastie of the United States Court of Appeals for the Third Circuit, sitting by designation.

the Government's refusal to comply with a pretrial order entered December 18, 1973, and for the additional reason that the defendant had been denied his right to a speedy trial. We find that the defendant has not been deprived of his sixth amendment guarantee of a speedy trial, but we also conclude that the district court properly required the Government to make a pretrial disclosure of witnesses to be called at the trial.

## I.

The facts of this case are extensively detailed in the district court's reported Memorandum Opinion, United States v. Blackburn Jackson, 374 F.Supp. 168 (N.D.Ill.1974). Briefly, on November 9, 1972, Blackburn Jackson was indicted [1] on five counts of mail theft in violation of 18 U.S.C. § 1708 and was released on bail. Trial was set for February 26, 1973. This trial date was vacated when the Government informed the court that it anticipated the return of a new indictment, and on March 13, 1973 the Government filed a superseding indictment charging Jackson and others with conspiracy to commit mail theft and to forge Government checks in violation of 18 U.S.C. § 371, and with additional counts of mail theft and forgery in violation of 18 U.S.C. §§ 495 & 1708. Trial was scheduled for June 11, 1973, but for reasons undisclosed by the record, the trial was rescheduled for September 10, 1973. Prior to the September trial date, the case was reassigned to Judge Marshall as part of his initial calendar. Because older cases on his calendar were scheduled for trial in September, Judge Marshall vacated the September trial date, and set the case for trial on January 8, 1974, with a pretrial conference to be held on December 18, 1973.

At the pretrial conference, the Government sought a continuance because other commitments of the government attorney assigned to the case prevented the attorney from meeting the January 8 trial date. Defendant Jackson objected to any continuance, and orally demanded an immediate trial. However, on the Government's motion, and in consideration of the court's then pending trial schedule, the case was continued until April 15, 1974. At the close of the pretrial conference, the court issued an order which, *inter alia,* required both parties to submit a list of witnesses to be called at trial.

No action was taken by the Government with respect to the order until immediately before trial, now scheduled to begin April 8, 1974. On April 1, the Government requested clarification of the December 18 order, and on April 2 indicated that insofar as the order required the Government to submit its witness list to the defendant, it would not comply. Based on this refusal, and on the additional finding that the Government's actions had deprived the defendant of his right to a speedy trial, Judge Marshall dismissed the indictment as to defendant Blackburn Jackson.

## II.

A finding that the speedy trial guarantee has been violated must be evaluated in light of the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in which four factors are weighed: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. As the Supreme Court noted, such a balancing test compels us to approach

---

1. The defendant in his brief alleges that he was arrested for violation of 18 U.S.C. § 1708 on August 25, 1972, and that he was re-arrested for violation of that same section on September 28, 1972. The record contains two complaints charging the defendant with violations of the above section, one dated August 24, 1972, the other dated September 29, 1972, but the record does not indicate that these complaints were acted upon. Because the circumstances surrounding the alleged arrests are unclear, we find, as did the district court, that this prosecution originated with the return of the indictment on November 9. Even assuming, however, that the protection of the speedy trial guarantee was triggered on August 25, this would not affect our result.

speedy trial cases on an *ad hoc* basis. *Id.*

We turn first to a consideration of the prejudice that the defendant has experienced. In *Barker,* the Court noted that what constitutes prejudice should be assessed in light of the interests that the speedy trial right was designed to protect, and the Court identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532, 92 S.Ct. at 2193. Of these three interests, however, only the second is of concern here. The first interest is not involved because the defendant was free on bail. As to the third interest, the defendant has never claimed, nor did the district court find, that his defense on the merits has been impaired.

■ The speedy trial guarantee was designed to protect against "emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial . . . ." Strunk v. United States, 412 U.S. 434, 439, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973). *See also* Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). However, in United States v. Annerino, 495 F.2d 1159, 1163–1164 (7th Cir. 1974), we stated that "conclusory allegations of general anxiety and depression . . . constitute a showing of only minimal prejudice of a kind normally attending criminal indictment," and found that this prejudice alone does not result in a constitutional violation without "a better showing on the other factors [length of delay and reason for delay] . . . ." *See also* United States v. DeTienne, 468 F.2d 151, 158 (1972), cert. denied 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973). The defendant here, in demanding a speedy trial, did not even make any conclusory allegations of emotional stress.

■ Further, an important indicator of the effect of any stress exerted on the defendant by the delay is the frequency and force of the defendant's own demands for a speedy trial. *Barker, supra,* 407 U.S. at 529, 92 S.Ct. 2182. The defendant's first demand for immediate trial did not occur until the December 18 pretrial conference, approximately thirteen months after indictment, and was then only made orally in response to the Government's request for a postponement of the January 8 trial date. The defendant again demanded a speedy trial in a written motion to dismiss on April 3. In neither of these instances, however, did the defendant allege any prejudice, nor did the defendant forcefully press his demand. The demands were not frequent, were merely *pro forma,* and did not indicate the presence of any actual prejudice. *See* United States v. Ricketson, 498 F.2d 367, 372 (7th Cir. 1974). Thus, the district court could only find that the defendant had been prejudiced "by the mere pendency of the charges made against him." (374 F.Supp. at 178). We conclude, therefore, that at most the defendant has suffered only that presumed prejudice accompanying the criminal process, and this, without more, does not amount to a constitutional violation.

At some point, however, this prejudice becomes intolerable when considered in light of the length of delay and the reasons for the delay. United States v. Annerino, *supra,* 495 F.2d at 1163; *cf.* United States v. Macino, 486 F.2d 750, 752 (7th Cir. 1973). That point is clearly not reached here.

■ The district court found that "the length of delay between indictment and disposition on the merits has been and will be unreasonable . . . ." (374 F.Supp. at 178). In calculating the length of delay, however, the period of delay attributable to review of an order appealable under 18 U.S.C. § 3731 should not be considered. The Supreme Court in United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966) reiterated that the speedy trial right is consistent with delays, and that while it secures rights to the defendants, "[i]t does not preclude the rights of public justice." Section 3731, as amended,

was designed to permit the Government to appeal from adverse dismissals, *see* United States v. Clay, 481 F.2d 133 (7th Cir.), cert. denied 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973), and insofar as appellate review is necessary for the fair administration of "public justice," the resulting delay is both unavoidable and justifiable. Thus, in a similar context, the court in United States v. Bishton, 150 U.S.App.D.C. 51, 463 F.2d 887, 890 (1972) excluded for speedy trial purposes the delay resulting from appellate review of an interlocutory trial order on the ground that "[t]he right of the Government to appeal decisions in the defendant's favor before jeopardy attaches is designed to protect the interest of society in lawfully prosecuting criminal offenders . . . ." Although the Government should have pressed its appeal in a more timely fashion, we cannot find that this indicates that the appeal was taken in bad faith or for the sole purpose of delay, and in the absence of such findings, to put the onus of appellate delay on the Government would severely infringe the Government's right to appeal.[2]

■ Excluding the period of delay attributable to appeal, the delay at issue here measures seventeen months from the return of the indictment on November 9, 1972, until its dismissal on April 8, 1974. This delay is not extraordinary, and we have tolerated longer periods of delay in speedy trial cases. *See, e. g.,* United States v. DeTienne, *supra.*

■ The reasons for the delay were essentially threefold: (1) the desire of the Government to seek a superseding indictment; (2) trial court congestion and case reassignment; and (3) Government unpreparedness. The first two reasons for delay must be weighed against the Government, *Barker, supra,* 407 U.S. at 531, 92 S.Ct. 2182, but in these circumstances they do not weigh heavily. In United States v. Annerino,

*supra,* 495 F.2d at 1163, we held that although the desire of the Government to proceed against several defendants in a single trial does not warrant unquestioning acceptance, it nonetheless deserves some deference where the charge is conspiracy. And while the delay resulting from trial court congestion and case reassignment must rest against the Government, we do not here accord it much weight. United States v. Joyce, 499 F.2d 9, 20 (7th Cir.), cert. denied 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); United States v. Jones, 154 U.S. App.D.C. 211, 475 F.2d 322, 324 (1972).

■ As the Government concedes in its brief, it must bear full responsibility for the three month delay occasioned by Government counsel's inability to meet the January 8 trial date. The delay, however, was brief, and it was not an attempt to gain a tactical advantage over the defendant or to harass him, circumstances which would weigh very heavily against the Government. *Barker, supra,* 407 U.S. at 531, 92 S.Ct. 2182. In view of the minimal prejudice the defendant has presumedly experienced, and in light of the fact that the total length of the delay was not inordinate and the reasons for a large part of it tolerable, we cannot find that the unwarranted three month delay tips the scale in the defendant's favor. United States v. Joyce, *supra,* 499 F.2d at 21. Accordingly, we have weighed the *Barker* factors, and conclude that the defendant has not been deprived of his right to a speedy trial.

### III.

■ The district court also dismissed the indictment because the Government refused to comply with the December 18 pretrial order directing the parties to submit to the court a list of witnesses to be called at trial. The Government con-

---

**2.** In United States v. Cox, 475 F.2d 837, 841 (9th Cir. 1973), the court upheld a trial court's dismissal of an indictment on speedy trial grounds while an appeal of an order granting suppression was pending. The

court, however, did not set forth the reasons for finding that the defendant's speedy trial guarantee had been violated, and thus the decision is no barrier to the result reached here.

tends[3] that the district court exceeded its authority and abused its discretion in compelling such discovery. We disagree.

The Federal Rules of Criminal Procedure provide that "the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." Rule 57(b). As presently constituted, however, Fed.R.Crim.P. 16(b) does not give the defendant the right to discover the Government's list of prospective witnesses. United States v. Verse, 490 F.2d 280, 281–282 (7th Cir. 1973). The Government translates this to mean that the court lacks authority to order the Government to divulge its list of witnesses because such an order would be inconsistent with Rule 16(b).

To support its interpretation, the Government first relies on 18 U.S.C. § 3432 which provides, *inter alia,* that a person charged with a capital offense shall be furnished a list of witnesses to be produced at trial. Urging the application of the maxim *inclusio unius est exclusio alterius,* the Government argues that the statute demonstrates that Rule 16(b) was not designed to allow discovery of witness lists in noncapital cases. Second, the Government points to Proposed Fed.R.Crim.P. 16(a)(1)(E), 62 F.R.D. 271, 305 (1974) which would permit the defendant to discover the Government's list of potential witnesses, and asserts that this similarly indicates that the present rule does not permit the discovery ordered here.

■■■■■■■ However, as Judge Marshall noted, the Government fails to distinguish between the right of the defendant to demand a list of witnesses, and the authority of the court to order such disclosure under the appropriate circumstances. 18 U.S.C. § 3432 and Proposed Rule 16(a)(1)(E) indicate that to give the defendant a right to demand a list of witnesses would be inconsistent with the Rules, but they do not in any manner suggest that the court does not possess the authority to order that such a list be disclosed.[4] Thus, the present rule is no bar to the order entered here, and the courts that have considered the issue before us have recognized that the district court possesses, in the exercise of its inherent power to promote the proper administration of criminal justice, the authority to require the Government to disclose its list of witnesses to be called at trial. United States v. Richter, 488 F.2d 170, 173–174 (9th Cir. 1973); United States v. Baum, 482 F.2d 1325, 1331 (2d Cir. 1973); United States v. Jordan, 466 F.2d 99, 101 (4th Cir. 1972), cert. denied 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973); United States v. Moceri, 359 F.Supp. 431, 434 (N.D.Ohio), mandamus denied without reaching merits sub nom., United States v. Battisti, 486 F.2d 961 (6th Cir. 1973); United States v. Leichtfuss, 331 F.Supp. 723, 732 (N.D.Ill.1971).[5]

The district court's power is not unlimited, but the cases cited by the Government do not suggest that the district court lacks the authority to enter the present order. In Miner v. Atlass, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960) the Supreme Court held that a district court sitting in admiralty lacked the power to order the taking of oral depositions for the purpose of discovery even though the General Admiralty Rules did not specifically prohibit such discovery. That case, however, provides no assistance to the Government, for as the Court itself noted, the decision was

---

**3.** Dismissal on this ground is also appealable under 18 U.S.C. § 3731. United States v. Battisti, 486 F.2d 961 (6th Cir. 1973); United States v. Richter, 488 F.2d 170 (9th Cir. 1973). *See also* United States v. Clay, *supra.*

**4.** The present case is therefore unlike United States v. Feinberg, 502 F.2d 1180 (7th Cir. 1974) because there the court found that the Jencks Act specifically prohibited the trial court from ordering the Government to produce before trial statements made by a defendant to a prospective government witness.

**5.** Although Rule 57(b) provides that the courts may proceed in any lawful manner not inconsistent with the Rules, there exists some doubt as to whether 57(b) was intended to authorize the type of order entered here. *See, e. g.,* United States v. Richter, *supra,* 488 F.2d at 173 n. 8. Unlike the Government, however, we do not find that the above decisions are "bottomed" on Rule 57(b), and our decision is not based on its scope.

based on the "particular nature and history" of the enactment of the General Admiralty Rules. *Id.* at 649, 80 S.Ct. 1300.

The Government also relies on several cases in which procedures utilized by the trial court were held to be unauthorized. *See* United States v. Weinstein, 452 F.2d 704 (2d Cir. 1971), cert. denied 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); United States v. Gray, 438 F.2d 1160 (9th Cir. 1971); United States v. Spock, 416 F.2d 165, 183 (1st Cir. 1969). The holdings of those cases, however, were based on the fact that the procedures employed by the trial judge conflicted either with protections accorded the defendant or with procedures firmly established by the Rules. The cases do not suggest that the district court lacks the inherent power, exercisable under appropriate circumstances, to assure the proper and orderly administration of criminal justice, and the conflicts encountered in those cases are not present here. In the absence of such conflicts, we agree with Judge Marshall's analysis that the Rules are "more regulators than creators of authority," (374 F.Supp. at 174), and find that the district court does possess the power to order the Government to disclose its list of witnesses to be called at trial.

■ The Government next claims that even if we find that the requisite authority exists, the trial court nonetheless abused its discretion because the discovery order was entered *sua sponte* and without a showing of materiality and reasonableness. The Government relies on United States v. Richter, *supra,* 488 F.2d at 174–175, which held that although the district courts do have authority to order disclosure of the list of prospective witnesses to be called at trial, the disclosure requested by the defendant should be made pursuant to the reasonableness and materiality standards of Fed.R.Crim.P. 16(b). However, Fed.R.Crim.P. 2 provides that the Rules "shall be construed to secure simplicity in procedure, fairness in administration and the elmination of unjustifiable expense

and delay." With this in mind, we do not believe, and do not think that *Richter* suggests that, under the appropriate circumstances, the discretion employed by the district court in the exercise of its authority need be limited to a defense showing of materiality and reasonableness.

The proper circumstances which would permit the court to order the Government to produce its list of witnesses are present here. The defendant and others were charged with conspiracy to commit mail theft and other substantive violations. During the course of status reports, the Government advised the trial court that the case would be quite lengthy because of the number of defendants and checks involved. At the December 18 pretrial conference, the Government again stated that the trial would be quite time consuming because they estimated that 100 checks and 100 witnesses would be involved. The case was described as "tedious [though] not particularly complex." (374 F.Supp. at 172).

■ In light of these circumstances, Judge Marshall designed his pretrial order to attain the following objectives: (1) to enable the court to determine, with some degree of accuracy the length of time to be allocated to the trial of the case, thereby facilitating docket control; (2) to expedite the trial by fostering more purposeful cross-examination; and (3) to protect against the adverse consequences of the situation in which a juror is acquainted with a witness by permitting knowledgeable voir dire questions. (374 F.Supp. at 175–177). In this context, considering the requirements necessary to prove the elements of the offenses charged, and in view of the large number of defendants, witnesses, and exhibits thought to be involved, we find these objectives were proper and that the court's order would further their attainment. If necessary, the Government could have, but here did not, seek a protective order under Fed.R.Crim.P. 16(e). We find, therefore, that the trial court did not abuse its discretion by ordering

the mutual disclosure of witnesses to be called at trial.[6]

Accordingly, the court's dismissal based on the Government's failure to comply with the December 18 pretrial order to the extent that it required the Government to provide a list of witnesses to be called at trial was proper. The judgment is affirmed in part; reversed in part.

Affirmed in part; reversed in part.

---

6. Judge Marshall noted that he does not order such disclosure where the circumstances do not require it.   374 F.Supp. at 175 n. 9.