# JAMES EDWARD WARD *v.* STATE OF MARYLAND

[No. 1249, September Term, 1981.]

*Decided July 8, 1982.*

The cause was argued before MORTON, MOYLAN and WEANT, JJ.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard P. Arnold, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted by a jury, sitting in the Circuit Court for Prince George's County, of being an accessory to second degree murder in the contract murder of his spouse's boyfriend and was sentenced by the court (Blackwell, J.) to thirty years' imprisonment. He raises a number of issues on appeal which will be addressed, along with the relevant facts, separately:

"1. Did the court err in refusing to declare a mistrial in response to the jury's deadlock?

2. Did the court err in imposing a sentence greater than that imposed on the principals?

3. Was a sentence greater than ten years barred by principles of double jeopardy?

4. Was Appellant denied the right to a speedy trial?

5. Was the evidence sufficient to support Appellant's conviction?

6. Was Appellant's conviction barred by principles of double jeopardy?"

### Jury Deadlock

The trial began on a Thursday and continued until 3:37 p.m. that day at which time the jury retired to deliberate its verdict. Shortly thereafter an exchange was had, via notes, between the court and the jury. At 6:11 p.m., when the jurors asked to rehear certain testimony, the court, with the approval of defense counsel, instructed them to rely on their recollections. The jurors were then told they could order dinner and they presumably did so. At 11:10 p.m. the court reconvened and the trial judge proposed giving the jury, in light of their lengthy deliberation, an *Allen* charge, similar to one given in *Allen v. United States,* 164 U.S. 492 (1896). Defense counsel objected to such a charge, insisting that there was no indication that the jury was deadlocked. At that propitious moment, the jury sent this note to the judge:

> "Judge Blackwell: We have taken four ballots and cannot come up with a unanimous vote. Is there anyway we can ask you a question about this situation. We have been deadlocked for six hours. Frederick Dichter, Foreman.

Now defense counsel was of the view that not only had the time passed for an *Allen* charge but it "might be time for a mistrial." He made no such motion, however. Rather, he immediately thereafter stated: "If the court is going to give the *Allen* charge, may I ask the court if it is going to give the ABA recommended instruction" accepted by the Court of Appeals in *Burnette v. State,* 280 Md. 88, 96 (1977). The trial judge then gave a modified *Allen* charge[1] virtually identical to that set out in *Burnette.*

---

1. "[Judge Blackwell]: The verdict must represent the considered judgement of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely

The jury returned to their deliberations and at 12:02 a.m., an hour later, again requested to review certain testimony. The judge, again with defense counsel's agreement, requested the jurors to rely on their recollections. The jury continued to deliberate from 12:06 a.m. until 3:02 a.m., at which time the court, with defense counsel's consent, advised the jurors they could return home for the remainder of the night and that they should return and resume deliberations at 10 a.m. if they could arrive at a verdict with additional time for deliberations.

The jury resumed deliberation at 10 a.m. on Friday morning. At 1:55 p.m. they sent this note to the judge:

> "A portion of the jury cannot arrive at either a guilty or not guilty verdict since 5:00 p.m. Thursday. This is still a result of all the deliberations by all of us."

In a second note the jury asked "can a jury vote undecided?" In response to the latter, the jury was instructed that their verdict had to be unanimous and that a vote of undecided was not a vote. They were then individually polled as to whether it was their judgment that they felt they were "hopelessly deadlocked or unable to arrive at a verdict in this case with additional time to deliberate." Each responded affirmatively.

Defense counsel interpreted the jury's note and poll to mean that it was hopelessly deadlocked and could not arrive at a unanimous verdict. Counsel moved for a mistrial and opposed, as coercive, the court's proposal to give a second *Allen* charge. The trial judge, while agreeing with defense counsel that the situation would "be hopeless" if the vote was still divided, interpreted the jury's notes to mean that there was a juror who had not yet decided as to appellant's guilt or

---

because of the opinion of your fellow jurors, or for the mere purposes of returning a verdict. You are not partisans. Since this is a criminal case, you are judges — judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

Counsel, anything further?"

innocence.[2] Without ruling on the motion, the trial judge decided to repeat the *Allen* charge, indicating that if, after the *Allen* charge and some additional reasonable time, the jury was unable to arrive at a verdict that afternoon, he would be willing to declare a mistrial.

At 2:18 p.m., after a second *Allen* charge, the jury resumed its final deliberations and 44 minutes later, after requesting and receiving additional instructions, returned a verdict of guilty.

The first issue for us is whether, after having given the *Allen* charge followed by the subsequent indications — by note or poll — that the jury was irretrievably deadlocked, the court, in again giving the instruction and sending the jury back for further deliberation, in effect coerced a verdict.

At the outset we note that the error asserted here is not the coercive nature of the supplemental "dynamite" or *Allen* charge given. It contained no threat to unreasonably detain the deliberating jury, nor was it addressed specifically to the minority jurors of the deadlocked panel. *See Smoot v. State,* 31 Md. App. 138 (1976). Although the instruction, like all supplemental verdict urging instructions, poses a latent danger of coercion, there is otherwise nothing objectionable about the particular charge given which was taken virtually word for word from that approved by the Court of Appeals in *Burnette.*

The coercive effect, appellant argues, is in repeatedly returning the jury to deliberate further when, after due and orderly consideration, they had twice indicated deadlock. Appellant misunderstands the very purpose of an *Allen* charge. Assuming the jury's difficulty was, as appellant

---

2. Although the jurors individually polled said they were deadlocked and one of the notes was worded "can a jury vote undecided?," indicating the jury as a whole could not agree, the accompanying note clearly indicated that "a portion of the jury [could not] arrive at either a guilty or not guilty verdict" after 12½ hours of deliberation. While the jury's communications are rather ambiguous, it does not matter in the final analysis which difficulty they confronted.

argues, reaching a unanimous verdict,[3] this is precisely the situation in which an *Allen* charge is appropriate.

The treatises and case law for the most part are agreed that the length of time the jury is to be held in an effort to secure an agreement is best left to the discretion of the trial court. 93 ALR 2d 627, 636 (1964); 53 Am.Jur. *Trial* (1st ed. § 962). The trial judge is accorded considerable latitude to return the jury for continued deliberations, short of genuine prejudice to a party, if he feels that further deliberation might be productive. This is true even where the jury reports that it is hopelessly deadlocked, *Devault v. United States,* 338 F.2d 179 (10th Cir. 1964), and unable to reach a verdict, *Decker v. State,* 386 N.E.2d 192 (Ind. 1979), *People v. Alexander,* 305 N.E.2d 61 (Ill. 1973).[4]

"The ABA Standards Relating to Trial by Jury," § 5.4 (b) recommends that where the court determines that a jury is unable to agree, it "may require the jury to continue their deliberations and may give or repeat" an *Allen* instruction, but it shall not "require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." The Commentary indicates that:

> "[Section 5.4 (b)] is intended to make it clear that the trial judge may send the jury back for further deliberations notwithstanding the jury's indication to the court that it has been unable to agree. It is the general view that the court may send the jury back for additional deliberations even though the jury has indicated once, twice, or several times that it cannot agree or even after they have requested that they be discharged."

The rationale, as the Tenth Circuit has wisely observed, is that:

---

**3.** Obviously, if the jury's difficulty was that one or more jurors had not yet come to a decision, the trial judge acted appropriately in sending them back for further deliberation.

**4.** *But see* Thompson v. United States, 354 A.2d 848 (D.C. Cir. 1976).

"The jury cannot determine the length of its deliberations, since, * * * that is the function of the trial judge in the exercise of sound judicial discretion. It is not unusual for a jury to advise the court that it is deadlocked and to thereafter agree and return a verdict. * * * Experience in the trial of jury cases demonstrates that jurors are not always the best judges of whether or not they are able to reach a verdict. In most cases for twelve human minds to agree, it takes careful consideration of the law and the evidence in the case and after that, discussion among the jurors of their views of the case. It is this kind of serious deliberation that is contemplated in our jury system. An experienced trial judge, in most cases, should be able to tell whether a jury has given its best consideration to the case. Therefore, the law imposes upon the trial judge judicial discretion to determine when the jury is deadlocked and unable to reach a verdict." *Devault, supra,* at 182-83, quoting *Mills v. Tinsley,* 314 F.2d 311 (10th Cir.), *cert. denied,* 374 U.S. 847 (1963).

We cannot but conclude that under the circumstances disclosed here the trial judge acted entirely within his discretion in twice sending the jurors back and giving them supplemental instructions when he thought they could arrive at a unanimous verdict despite their protestations to the contrary.

### Illegal Sentence

Appellant asserts that the sentence imposed was illegal for two reasons: because his sentence as an accessory was greater than that imposed on the principals and because it was barred by principles of double jeopardy.

Appellant had previously been found guilty of conspiracy to murder his spouse (Count 1), conspiracy to murder Gerald Godbout, her boyfriend (Count 2), and being an accessory before the fact to Godbout's murder (Count 3) and was sen-

tenced to three consecutive life terms. Count 4, attempt to murder his spouse, and Count 5, responsibility for the murder of Godbout under Md. Ann. Code (1957, 1971 Repl. Vol.), art. 27, § 616, were *nol prossed.* We affirmed the convictions in *Ward v. State,* 30 Md. App. 113 (1976) (hereinafter "*Ward* I"). A new trial was ordered by the circuit court under post conviction relief procedures because appellant had been denied effective assistance of counsel as to Counts 1 and 2. Those counts were dismissed and a new trial was awarded as to Count 3, apparently because certain evidence admitted to prove the conspiracy counts may have affected the jury's verdict on the accessoryship count. That order was affirmed by this Court in *Ward v. State,* an unreported opinion (No. 1359, September Term, 1976), filed September 29, 1977 (hereinafter "*Ward* II").

Prior to his new trial on Count 3, appellant filed motions to dismiss. The circuit court agreed that Count 3, unspecified as it was to degree, was limited to the charge of accessory to first degree murder, in part because it believed there was no such crime as accessory before the fact to second degree murder and had to be dismissed because the principals had been convicted of second degree murder. The State appealed the dismissal of the indictment and the Court of Appeals, having issued a writ of certiorari before review by this Court, reversed, holding that a trial on the count of accessoryship before the fact to second degree murder was not precluded. *State v. Ward,* 284 Md. 189 (1978) (hereinafter "*Ward* III").

Upon remand and before commencement of the second trial on Count 3, the trial court denied appellant's remaining motions to dismiss on speedy trial and double jeopardy grounds. Appellant immediately appealed the double jeopardy ruling. The Court of Appeals, after again issuing a writ of certiorari prior to review by this Court, affirmed the denial of the dismissal on double jeopardy grounds, disagreeing with appellant's theory that the *nolle prosequi* of Count 5 at the first trial amounted to an acquittal of all offenses charged in the fifth count, including the acces-

soryship charge. *Ward v. State,* 290 Md. 76 (1981) (hereinafter "*Ward* IV"). The second trial then proceeded and appellant was convicted as an accessory before the fact to second degree murder.

## (1)

Although at the time of appellant's sentencing the principals committing the murder had pleaded guilty to murder in the second degree and each had been sentenced to ten years' imprisonment, the trial judge, after retrial, sentenced appellant to thirty years' imprisonment, the maximum sentence on the accessoryship conviction. Appellant argues that common law principles mandate that appellant receive no more than the ten year sentence received by the second degree murder principals to the crime. Appellant cites, as support, *Nuthill v. State,* 11 Humph. 247 (Tenn. 1850), and the language of the Court of Appeals in "*Ward* III" that "an accessory should never suffer more punishment than the principal." Although the Court in "*Ward* III" held only that the appellant, as an accessory before the fact, could not be convicted of a *higher degree* of murder than the principals, appellant argues that the above quoted language also precludes an accessory from *receiving a longer sentence* than a principal of the same degree.

The State responds that the common law requires only that the accessory not receive a longer sentence than that which *could potentially be imposed* upon the guilty principals. Since the thirty year sentence imposed on appellant as an accessory before the fact of second degree murder does not exceed the maximum thirty year sentence to which the principals were potentially subject,[5] this common law rule, according to the State, has not been violated. The State finds support in *State v. Loveless,* 80 S.E.2d 442 (W.Va. 1954), wherein it is stated that "[t]he test is not whether the principals received a more severe penalty than the accessory, but

---

5. See Md. Ann. Code (1957), art. 27, § 414.

whether or not the former could, under the law, have received a penalty equal to that imposed upon the accessory." *Id.* at 449.

The rationale of such an approach is that the culpability of an accessory may very well exceed that of the principal, thus warranting imposition of a harsher sentence on the accessory. *State v. Barrow,* 232 S.E.2d 693, 698 (N.C. 1977). As the Court of Appeals stated in *Henry v. State,* 273 Md. 131, 150 (1974):

> "It is elementary that in passing sentence in a given case the sentence should be fashioned, to the best of the sentencing judge's ability, to the facts and circumstances surrounding the crime and the individual then being sentenced. Each defendant in each case is unique in the proper sense of that often misused word."

Thus, in *Loveless, supra,* it was held not to be error to sentence the accessory to death even though the principals, because of the presence of mitigating circumstances, received sentences of life imprisonment where the principals could also have received death sentences.

We find no error in sentencing appellant to a greater term than that actually received by his presumably less culpable principals.

(2)

Appellant asserts that that portion of the sentence in excess of ten years is barred by principles of double jeopardy. He argues that because neither the initial indictment nor instructions in the first jury trial specified any degree of murder, the first jury's guilty verdict on the third charge of being an accessory before the fact to Godbout's murder "must be construed as a finding of guilty to the charge of accessory before the fact to manslaughter," the lowest grade of homicide for which the maximum sentence is ten years' imprisonment under Md. Ann. Code (1957), art. 27, § 387.

Having been convicted at his first trial as an accessory only to manslaughter, he must be acquitted of being an accessory to murder in the first or second degree.

Appellant, not having raised the issue in "*Ward* III" or "*Ward* IV," has waived it. He never asserted in "*Ward* III" that he had been convicted only as an accessory to manslaughter, even though the Court of Appeals there dealt with the issues of whether there could be an accessory to murder in the second degree and whether the form of the count permitted appellant to be thus tried. Nor did appellant assert, in the double jeopardy appeal of "*Ward* IV," that his retrial was barred on the second degree accessoryship count because he had been "acquitted" at the first trial. His only double jeopardy allegation was that the *nolle prosequi* of Count 5 prohibited retrial on the charge of being an accessory. Appellant has been before the appellate courts on these charges on four prior occasions and cannot raise yet another double jeopardy argument on this fifth appearance.

## Speedy Trial

Appellant asserts that he was denied his constitutional right to a speedy trial as a result of a seven year delay from the time of his arrest on July 10, 1974, until his second trial on August 24, 1981.

A delay of "constitutional dimension" in bringing an accused to trial triggers the "difficult and sensitive balancing process" of *Barker v. Wingo,* 407 U.S. 514 (1972), which has been consistently applied by the Court of Appeals. *Jones v. State,* 279 Md. 1 (1976); *Erbe v. State,* 276 Md. 541 (1976); *Smith v. State,* 276 Md. 521 (1976); *Epps v. State,* 276 Md. 96 (1975). We conclude that a delay as long as seven years, one month and two weeks is worthy of constitutional scrutiny.

The balancing test established in *Barker* requires consideration of four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant or his case.

The pertinent events to which these factors are to be applied are:

| | |
|---|---|
| July 10, 1974 | Appellant arrested |
| July 17, 1974 | Appellant indicted |
| September 13, 1974 | Case assigned for trial on November 19, 1974 |
| November 15, 1974 | Appellant moves for speedy trial |
| November 18, 1974 | State moves to continue case |
| January 31, 1975 | Appellant moves to dismiss the indictment for lack of speedy trial |
| February 4, 1975 | Appellant's motion to dismiss for lack of speedy trial denied |
| February 5, 1975 | Trial begins |
| March 10, 1975 | Appellant sentenced |
| April 4, 1975 | Appellant files notice of appeal |
| January 29, 1976 | Court of Special Appeals affirms appellant's conviction "*Ward* I" |
| March 1, 1976 | Mandate issued by Court of Special Appeals |
| May 5, 1976 | Certiorari denied by the Court of Appeals |
| July 23, 1976 | Petition for relief under Uniform Post Conviction Procedure Act filed |
| December 16, 1976 | Order and opinion granting appellant's petition for post conviction relief filed (Counts 1 and 2 dismissed; new trial ordered on Count 3) |

| | |
|---|---|
| September 29, 1977 | Post conviction decision affirmed by Court of Appeals, "*Ward* II" |
| November 9, 1977 | Case set for retrial on February 14, 1978 |
| December 6, 1977 | State's petition for writ of certiorari denied |
| January 17, 1978 | Motion to dismiss for lack of speedy trial filed |
| February 10, 1978 | Motion for continuance filed by State because of illness of prosecutor. Order granting continuance to April 19, 1978, filed |
| April 11, 1978 | Hearing on appellant's motion to dismiss on double jeopardy grounds. Motion granted |
| May 1, 1978 | Notice of appeal filed by State |
| December 21, 1978 | Court of Appeals reverses the trial court's order of dismissal and remands for a new trial "*Ward* III" |
| January 22, 1979 | Mandate of Court of Appeals issued |
| February 23, 1979 | Trial set for May 14, 1979, with motions to be heard on April 18, 1979 |
| April 23, 1979 | Motions rescheduled for hearing due to illness of prosecutor |
| May 9, 1979 | Appellant's remaining motions to dismiss heard |
| May 11, 1979 | Motions denied and |

| | |
|---|---|
| | appellant files notice of appeal |
| November 26, 1979 | Court of Appeals grants writ of certiorari prior to hearing in Court of Special Appeals |
| January 3, 1980 | Case argued in Court of Appeals |
| April 7, 1981 | Opinion affirming trial court's denial of appellant's motion to dismiss on ground of double jeopardy filed by Court of Appeals, "*Ward* IV" |
| May 7, 1981 | Mandate of Court of Appeals issued |
| June 25, 1981 | Trial is set for August 24, 1981 |
| August 3, 1981 | Pretrial motions filed by appellant |
| August 4, 1981 | Notice setting pretrial motions for August 13, 1981, filed |
| August 13, 1981 | Pretrial motions heard and denied |
| August 24, 1981 | Trial begins |

### Reasons for the Delay

When we categorize the delays, as the State suggests, it becomes apparent that most are either chargeable to appellant or not chargeable to either appellant or the State.

The first period from July 10, 1974, the date of appellant's arrest, until February 5, 1975, his first trial, has been previously considered by this Court in "*Ward* I." While we there stated that the delay between November 19, 1974, and February 5, 1975, was attributable to the State, we also

stated that it was not heavily weighed against the State. In light of *Wise v. State,* 47 Md. App. 656, 675 (1981), wherein this Court stated that 180 days are regarded as necessary for orderly trial procedure, the State can, at most, be charged with 30 days.

The second period from February 5, 1975, until December 16, 1976, reflects appellant's trial and his efforts through appeal to this Court and through post conviction relief procedures to obtain reversal. Such delay, even where reversal follows, is not relevant to the analysis. *Britton v. State,* 10 Md. App. 70, 73 (1970).

Our concern is only with the delay in proceeding with the retrial once the mandate has been issued remanding the case to the trial court. *Coleman v. State,* 49 Md. App. 210, 220 (1981). Thus, the next period of interest is that from the issuance of the mandate on December 16, 1976, to the setting of trial on April 11, 1978. Approximately one year of that time period — from December 16, 1976, until December 6, 1977 — the State was appealing the grant of post conviction relief. Delays caused by government appeals should be charged against the State only when the appeal is taken in bad faith or as a dilatory tactic. *See United States v. Herman,* 576 F.2d 1139, 1146 (5th Cir. 1978); *United States v. Jackson,* 508 F.2d 1001, 1005 (7th Cir. 1975); *United States v. Bishton,* 463 F.2d 887, 890 (D.C.Cir. 1972). We are in agreement with the assessment of the trial judge presiding at the appellant's speedy trial motion that the issue being appealed by the State was not a frivolous one; [6] thus, the duration of the pending appeals cannot be charged to the State.

The second delay in the time period was from February 14, 1978, when the trial was to commence, until April 11, 1978, when appellant's pretrial motions to dismiss were heard.

---

**6.** While the State conceded that appellant was denied effective representation of counsel at his initial trial because of defense counsel's failure to assert the defense of the statute of limitations to the conspiracy charges, the State urged that a new trial on the accessoryship charge was not necessary because evidence improperly admitted as to the existence of a conspiracy was independently admissible on the accessory charge as well.

Although the record indicates that the two month post-ponement was at the request of the State due to the prosecutor's illness, when viewed in another light there was a delay of just over four months between the Court of Appeals' denial of certiorari and the hearing on appellant's pretrial motions. Because this was a retrial, the facts of which should have been familiar to the prosecutors who had tried the case once, "something less than the ordinary six-month allowance" is appropriate. *Coleman v. State,* 49 Md. App. at 222. Eight months to process a case, two months of which were caused by the defendant, were held in *Coleman* not to be grossly inordinate and we cannot say that four months were grossly inordinate under the circumstances here.

The next time lapse, between the granting of appellant's motion to dismiss on April 11, 1978, and the Court of Appeals' decision in "*Ward* III" on December 21, 1978, cannot, appellant concedes, be weighed against the State.

Appellant does argue as excessive, however, the five month delay between the filing of "*Ward* III" on December 21, 1978, and the hearing on appellant's pretrial motion on May 9, 1979. Because the mandate of the Court of Appeals was not issued until January 22, 1979, the delay in retrying appellant was in fact only three and one-half months. *See Coleman, supra.* Although the State had twice fully prepared for trial, we cannot say that three and one-half months are an unreasonable length of time to process the case for retrial.

The final delay, argues appellant, rests in the lap of the Court of Appeals. Appellant's appeal from the denial of his motion to dismiss on the ground of double jeopardy was argued before that Court on January 3, 1980, and not decided until April 7, 1981, a full year later than the three months contemplated by the Maryland Constitution, Article IV, § 15.[7]

---

7. That provision states that "[i]n every case an opinion, in writing, shall be filed within three months after the argument, or submission of the cause . . . ." It has been held, however, to be directory only. McCall's Ferry Power Co. v. Price, 108 Md. 96 (1908); Pope v. Secretary of Personnel, 46 Md. App. 716, 718 (1980).

While other courts have flatly stated that "a violation of the right to a speedy trial can arise from the consumption of an excessive amount of time by the appeals court considering an interlocutory appeal," *Atkins v. Michigan*, 644 F.2d 543, 548 (6th Cir.), *cert. denied*, 452 U.S. 964 (1981), we have held that when a trial is delayed as a result of defendant's attempts at reversal, the speedy trial right is not affected, even where reversal follows. *Britton v. State*, 10 Md. App. 70 (1970). Certainly appellant cannot be in a better situation where his appellate attempts fail.

While it is clear that appellant, who was incarcerated from the time of his first sentencing on March 10, 1975, until May 11, 1978, made repeated requests for a speedy trial, on balance, having carefully considered each of these factors and all of the circumstances, we conclude that appellant's constitutional right to a speedy trial was not infringed.

## Sufficiency of the Evidence

Appellant's penultimate ground for appeal is the sufficiency of proof of his criminal agency; in particular, that he "aided, counseled, commanded or encouraged" the murder of Godbout. We think the evidence, although primarily circumstantial, was sufficient to convince a rational trier of fact beyond a reasonable doubt that appellant "aided, counseled, commanded or encouraged" the murder of Godbout. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Appellant's former wife testified that on three separate occasions appellant made threatening remarks, in her presence and over the telephone, to the effect that "I would get my divorce, but it would not be the way I wanted it, that he would have his friend take care of me"; "that if I didn't get rid of my boyfriend, that he would walk in and kill us by shooting us"; and "get rid of your boyfriend or I will kill you both."

A note was found in the car driven by the principals at the time of their arrest describing appellant's wife, address and work hours; the make and tag number of an automobile in

which she could be "picked up," (which tag number matched that of the car Godbout was driving at the time of his death) and Godbout's name. The note was typed on a script typewriter which matched, with "reasonable probability" in the eyes of a document examination expert, the typewriter used to type a letter to the Prince George's County Human Relations Committee bearing appellant's signature.

Appellant's ex-wife and her daughter testified that in August, 1974, they found in appellant's home a notebook in which was written Godbout's name, address and automobile tag number.

There was further testimony by a witness in a civil case against appellant that appellant said that he "had perjured myself when I said that I didn't know when he had hired Brockman and Maness to kill his wife. That I knew damn good and well when it was. It was the day that he had met them at Jesse Stephen's home . . . . That I lied when I said I didn't know when the date was on the witness stand . . . ."

There was sufficient evidence to sustain appellant's conviction.

### Denial of Appellant's Motion to Dismiss

Appellant lastly contends that the trial court erred in denying his motion to dismiss on the ground of double jeopardy in that his acquittal in "*Ward* II" as an accessory to first degree murder bars his retrial. The Court of Appeals in "*Ward* IV," addressing another double jeopardy argument that appellant's retrial as an accessory to second degree murder was precluded by the State's *nolle prosequi* of the Count 5 murder charge, specifically stated that appellant could be retried on the charge of accessoryship to second degree murder. *See* 284 Md. at 209.

> *Judgment affirmed; costs to be paid*
> *by appellant.*