## STATE OF MARYLAND *v.* TODD RICARDO MINES

### A/K/A RICHARD STEPHENSON

[No. 949, September Term, 1980.]

*Decided March 3, 1981.*

The cause was argued before WILNER and MacDANIEL, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard S. Basile, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Terrell N. Roberts, III,* for appellee.

ORTH, J., delivered the opinion of the Court.

It once was that a delay in bringing an accused to trial was governed solely by the guarantees of a speedy trial set out in the Sixth Amendment to the Constitution of the United States and Article 21 of the Maryland Declaration of Rights. A delay of constitutional dimension triggered the "difficult and sensitive balancing process" of *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182 (1972), and when that test showed that the constitutional guarantees were offended, the appropriate sanction was the dismissal of the charges. *See Jones v. State,* 279 Md. 1, 367 A.2d 1 (1976), *cert. denied,* 431 U.S. 915 (1977). It is true that the matter of trial delay was also the subject of legislative enactment and judicial rule. Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 591 provided that a trial date shall be set which shall not be later than six months from the date of arraignment of the accused or the appointment or appearance of counsel for him which ever first occurs. The date established for trial could not be postponed except by the administrative judge of the court upon extraordinary cause shown. § 591 (a). The Court of Appeals was authorized to establish rules to implement the statute. § 591 (b). The Court of Appeals responded by adopting Rule 740 of the Maryland Rules of Procedure which provided that the date of trial and postponements shall be governed by the statute. We held, however, that the provisions of the statute were intended by the Legislature to be directory and not mandatory because it had not explicitly

provided the extreme sanction of dismissal of an indictment for administrative noncompliance. *Young v. State,* 15 Md. App. 707, 292 A.2d 137 (1972). And, of course, it followed that Rule 740 was directory and not mandatory, as there was no sanction provided by the implementing rule. *State v. Hunter,* 16 Md. App. 306, 312-313, 295 A.2d 779 (1972). We said in *Young:* "The ultimate prejudice to an individual defendant, sufficient to call for the final sanction of dismissing an indictment, is still measured, however, against the standards of the [constitutional] speedy trial provisions. . . . Non-compliance with Section 591 is unquestionably a factor, but only a single factor, to be considered in the interplay of all the factors that go to resolve the question of whether a defendant has been denied his right to a speedy trial." 15 Md. App. at 710-711. The Court of Appeals adopted our view that the provisions of § 591 were directory and not mandatory and our interpretation of the consequences flowing therefrom by summarily approving our *Young* opinion. *Young v. State,* 266 Md. 438, 294 A.2d 467 (1972).

In the 1977 revision of the Maryland Rules of Procedure pertaining to Criminal Causes the matter of trial dates appeared in Rule 746. The rule departed from the statute as to the period within which a trial must be had and as to when that period commenced. Rule 746 provided:

"a. *General Provision.*

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel).

b. *Change of Trial Date.*

Upon motion of a party made in writing or in open court and for extraordinary cause shown, the

> county administrative judge or a judge designated
> by him may grant a change of trial date."

The substantial reduction of the time period within which criminal trials were to be scheduled caused no real consternation among prosecutors and others responsible for assigning cases for trial. The new Rule 746, like its predecessor Rule 740 and the statute, was interpreted as being only directory. The result was almost wholesale violations of its provisions. The desirable goal of a more prompt hearing and resolution of criminal charges than is dictated by constitutional speedy trial guarantees was being seriously eroded, and the intention of the Court of Appeals to put teeth in a new regulation governing the assignment of criminal cases for trial was being subverted. Apparently, this would prevail as long as under *Young* § 591 and Rule 746 were accorded directory rather than mandatory force.

The Court of Appeals cleared the waters. In *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), it overruled *Young,* held that the 120-day trial date requirement of Rule 746 was mandatory, absent extraordinary cause, and declared that dismissal is ordinarily the appropriate sanction for violation of the trial date requirement. *Id.* at 318. The Court denied motions for reconsideration filed by the State and by Hicks, but issued a per curiam opinion on the State's motion. *Id.* at 334-338. It expressly adhered to its view with respect to *Young,* the trial date requirement, and the sanction. *Id.* at 334-335. It explicated, however, its position regarding the sanction, noting two circumstances under which dismissal was not appropriate. The first was a violation of that provision of the rule which requires that the act of setting the trial date be done within 30 days. The second "is where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746." *Id.* at 335. The Court explained: "It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation." *Id.*

The Court also settled in its per curiam opinion the question of the application of its rulings:

"[O]ur holdings in the instant case will be
entirely prospective, applying only to future crim-
inal prosecutions and only to those pending cases
where, as of our mandate in this case, there have
been no appearances of counsel or first appearances
of defendants pursuant to Rule 723." *Id.* at 338.

The mandate issued 25 July 1979.

*Hicks* disturbed a number of prosecutors and assignment
officers, bothered more than a few judges, and was a matter
of concern to some members of the General Assembly. The
main basis of complaint of those charged with the adjudica-
tion and enforcement of the criminal laws seemed to be a
sincere doubt that it was practicably possible to comply with
the requirement that criminal cases be tried at the circuit
court level within 120 days of the appointment or waiver of
counsel or after the appearance of the defendant under Rule
723. In any event, Rule 746 was thereafter twice amended in
substance upon the recommendation of the Standing Com-
mittee on Rules of Practice and Procedure. Effective 16
November 1979 the time for trial requirement was increased
by substituting "180" for "120" in § (a). Effective 3 July 1980
"good cause" was substituted for "extraordinary cause" in
§ (b). In both instances the Court found that an emergency
existed with reference to the proposed changes. The order
adopting the changes specified that they "shall apply to all
proceedings . . . commenced [after the effective date] and, so
far as practicable, to all proceedings then pending. . . ."

Section 591 of Art. 27 was also amended, effective 1 July
1980. Acts 1980, ch. 378 substituted "180 days" for "six
months" and "good cause" for "extraordinary cause." But the
statute still provides that the date on which the 180 day
period within which trial shall be set is the date of the
arraignment of the accused or the appearance or appoint-
ment of counsel, whichever occurs first.

Todd Ricardo Mines, also known as Richard Stephenson,
was placed into the middle of all of this by an indictment
filed in the Circuit Court for Prince George's County on 27
June 1979 charging him with grand larceny and related

offenses. The court dismissed the indictment "with prejudice" by its order of 13 June 1980. The reasons for the court's action, as stated in the order, were that Mines "has been denied his right to a trial within 180 days pursuant to Rule 746 . . ." and that "dismissal of the indictment is the appropriate sanction in this case. . . ." The State appealed. The question is whether the trial court erred in dismissing the indictment.

It is evident from the record and undisputed by the parties that Mines appeared before the Circuit Court for Prince George's County pursuant to Rule 723 on 19 July 1979. Appearance of counsel had not then been entered, and the docket entries on that date read that he waived his right to counsel. So Rule 746 was triggered on 19 July 1979. This was six days before the *Hicks* mandate was issued. Therefore, the *Hicks* holdings are not applicable to Mines' case. Mines recognizes this. He urges us, however, to apply the *Hicks'* rulings regardless, under the rationale of *McClain v. State,* 288 Md. 456, 419 A.2d 369 (1980). The relevant question in *McClain* was whether *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), which held that statements obtained in violation of Maryland District Rule 709 were not admissible in evidence, was applicable to a case tried before the *Johnson* decision but reached for appellate review after that decision. McClain had raised the issue before the trial court, and the view of the Court of Appeals was that it would be unjust and unfair in such circumstances for McClain not to have the benefit of that holding. It held that *Johnson* was applicable to McClain's case. 288 Md. at 470. But the Court cautioned: "Our holding here is not to be interpreted as being applicable to any case other than one arising under similar facts and circumstances." *Id.* Mines' case does not arise under facts and circumstances similar to McClain's case. Furthermore, the Court in *Hicks,* as we have seen, unequivocally settled the question of retroactivity. *McClain* provides no basis for us to depart therefrom. In short, the *Hicks* holdings do not apply to Mines' case because Mines appeared before the court pursuant to Rule 723 before the *Hicks* mandate issued.

Of course, that Rule 746 is inapplicable to Mines' case in a mandatory posture does not mean that it does not apply at all. It is still applicable, although only as directory. So we apply it to see if there has been noncompliance which would serve, not necessarily to compel dismissal of the indictment as it would were *Hicks* applicable, but as a factor to be considered in the determination whether Mines has been denied his constitutional right to a speedy trial.

When Mines appeared before the court pursuant to Rule 723, the period within which he had to be tried was 120 days. The one hundred and twentieth day from 19 July 1979, the date on which Rule 746 was triggered, was 16 November 1979. *See* Md. Rule 8. That was also the effective date of the amendment to Rule 746 which increased by 60 days the period within which the accused must be tried. In light of the pronouncement in the order adopting the change in the rule that "so far as practicable" the change "shall apply . . . to all proceedings then pending . . .," we think the change applied to extend the time within which Mines could be tried another 60 days, or 180 days from 19 July 1979. We see no compelling reason why it was not "practicable" to apply the change to Mines' case in the circumstances, especially since the period within which he was to be tried under the former rule had not expired when the change took effect and the 120 day designation was merely directory in any event.

The one hundred and eightieth day from 19 July 1979 fell on 15 January 1980. In the meantime Mines came before the court on 7 January 1980, withdrew his plea of not guilty and entered a plea of guilty to petit larceny charged in the second count of the indictment. We gather from a transcript of the proceedings that this was pursuant to a plea bargain. The court made the necessary examination of the accused. Mines affirmatively stated that he was pleading guilty because he was guilty and for no other reason. The court found that the plea was "freely, voluntarily, and understandably entered." It instructed the Clerk to so show and also to show that Mines had withdrawn his plea of not guilty and entered a plea of guilty to count 2. The court accepted the plea. The

adjudication phase of the trial was completed, but disposition was postponed until 20 February pending receipt of a pre-sentence investigation report. The sentencing date was subsequently changed to 28 February. On that date, the guilty plea was stricken. It seemed that during the pre-sentence investigation Mines had indicated that he was not guilty of the offense. After inquiry concerning the facts, the court thought that the evidence of guilt was not so overwhelming as to justify the acceptance of an "Alford plea." *See North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160 (1970). The court observed that Mines' plea had been entered as "a straight guilty plea"; Mines had not professed innocence or protested his guilt at that time. The case was continued. On 11 March 1980 the assignment office scheduled it for trial on 18 April. For reasons not pertinent at this point, it was not tried as scheduled, and a new trial date of 13 June was set. On that date, upon hearing, the court granted a motion filed by Mines to dismiss the indictment.[1]

On 7 January 1980, when the court accepted the plea of guilty entered by Mines, the case was "tried" within the contemplation of Rule 746. A plea of guilty, properly entered and effectively accepted, is a conviction; nothing remains but to determine punishment. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709 (1969). Thus, the adjudication phase of Mines' case was completed on 7 January 1980. All that remained to be done was to impose punishment, and sentencing was postponed only so a pre-sentence investigation report would be available. Furthermore, the trial took place within the time required by the rule; 180 days from 19 July 1979 did not expire until 15 January 1980. So on 7

---

**1.** The record discloses that there were two motions to dismiss the indictment before the court. The first was filed on 5 November 1979 before the expiration of 120 days from Mines' appearance in court pursuant to Rule 723. This motion was based on Rule 746 and State v. Hicks, 285 Md. 310, 403 A.2d 356 (1979). Mines seemed to be protesting the continuance of the original trial date of 3 October 1979 to 20 November 1979.

The second motion, filed 26 May 1980, claimed a denial of a speedy trial on constitutional grounds. Mines had filed a line demanding a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution on 23 November 1979.

January 1980 there had been no violation of the rule; its requirements had been satisfied. But when the guilty plea was stricken, the period within which trial was permitted by the rule had expired. The question is what effect the rule had on the case after the guilty plea had been stricken.

The fact of the matter is that Rule 746 and Art. 27, § 591 do not cover this situation. The striking of the guilty plea here may be likened to the grant of a new trial by a trial court or a remand for a new trial by an appellate court. Neither the rule nor the statute prescribes within what period the trial shall be had in such circumstances; it is the first bringing of an accused to trial that is contemplated by both of them.

We can envision several ways in which the rule could be construed consistently with its general rationale so as to govern the situation before us. But we have no power either to enact legislation or to adopt rules of procedure relating to the trial courts; that is the prerogative of the General Assembly and the Court of Appeals respectively. For us to select one of the possible alternatives of which we can conceive, no matter how logical, reasonable and preferable it may seem, would be judicial legislating in the guise of judicial construction in order to effect our preference. This we may not do. We have no power to rewrite or to amend the rule.

The Court of Appeals, and this Court, following its lead, have repeatedly reminded "all hands" that the Maryland Rules of Practice and Procedure are "precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.' " *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476 (1970), *quoting, Brown v. Fraley,* 222 Md. 480, 483, 161 A.2d 128 (1960). *See State v. Diggs,* 24 Md. App. 681, 682, 332 A.2d 283 (1975). No matter whether the Rule 746 rubric is read precisely or casually, it is apparent that its requirements were satisfied with respect to Mines' case because the case was tried within the designated period. It would seem, therefore, that the provisions of the rule were no longer

relevant to Mines' case, and that they were not revived upon the striking of the guilty plea since the rule is silent with regard to a further trial. We need not decide, however, whether the provisions were revived. Assuming that they were, the best construction that Mines could hope for consistent with justice, common sense and sound reason, would be that the 180 day period in which to effect trial would start to run again from the date of the striking of his plea, namely 28 February 1980. The trial date set, 13 June 1980, fell within this period. Consequently, whether the rule be deemed to be dead, once and for all, as far as Mines' case was concerned, on 7 January 1980 upon his first trial, or whether it be considered as resurrected on the striking of the plea, its provisions, in either event, were not relevant to indicate that there was an undue delay in scheduling the trial for 13 June 1980.

There is no doubt as to why the trial court granted the motion to dismiss the indictment. At the hearing on the motion to dismiss the judge said: "[W]hile all the requirements necessary to grant a dismissal on a motion for speedy trial may not have been shown [,] under Rule 746, I frankly see no alternative under the law as we see it and feel it is." Shortly thereafter he declared that "in view of the *Hicks* decision, in view of this rule [746] I'm going to grant the dismissal." And at the conclusion of his remarks on the matter, after observing that "it's things like this that certainly do reflect adversely upon the Court system and criminal justice," he asserted: "But because of Rule 746 and the *Hicks* case I see no alternative." The order itself, as we have indicated, expressly stated in dismissing the indictment with prejudice that it appeared to the court "that the defendant has been denied his right to a trial within 180 days pursuant to Rule 746 of the Maryland Rules of Procedure . . ." and that it further appeared to the court "that dismissal of the indictment is the appropriate sanction in this case. . . ." Before the order of dismissal was signed, defense counsel wrote the judge:

"My recollection of your decision was that you granted my motion to dismiss on the basis of a

denial of my client's right to a speedy trial. I argued that Rule 746 had set a guideline; I did not argue that it was mandatory to dismiss on that basis."

Counsel objected to the State's proposed order and enclosed his own proposed order. The judge replied through his law clerk that the motion had been granted "not for [the denial of] a speedy trial, but for a violation of Rule 746." The clerk noted that the judge "suggested an appeal in hopes that this matter could be cleared up above." [2] It is plain that the trial court dismissed the indictment on the basis that Rule 746 applied in this case, that it had been violated, that the *Hicks* holdings controlled its application and that, therefore, the dismissal of the indictment was mandatory.

In the light of our findings, the trial court was wrong. We have found, contrary to the rulings of the trial court, that under the "entirely prospective" formula adopted by the Court of Appeals for its holdings in *Hicks,* those holdings were not applicable to the case at hand, and we have concluded that there was effective compliance with Rule 746 so that there was no violation of its provisions calling for dismissal of the indictment. We vacate the order dismissing the indictment, and remand the case for further proceedings.[3]

In the ususual circumstances of this case, the fact that Mines was brought to trial on 7 January 1980, within 180 days of his appearance in court pursuant to Rule 746, is not in itself dispositive of whether he was denied a speedy trial

---

2. At the hearing, after discussing the delay in the frame of reference of Rule 746, the judge observed: "I would frankly relish an appeal on it and would like to see the question further clarified." The judge's last comment at the hearing was: "I don't usually invite an appeal, but I invite one in this case."

3. Mines, pointing to Md. Rule 1085, suggests that the State is precluded on appeal from challenging the trial court's application of State v. Hicks, *supra*, and Rule 746 because it did not specifically protest below. Mines says: "The point is that the State could have raised its contentions to the lower court and possibly have persuaded the lower court to change its ruling." The notion that we may not consider the matter of the application of *Hicks* and Rule 746 to Mines' case is frivolous. The issue was plainly tried and decided by the trial court and served as the basis of the order from which the appeal was taken.

in the constitutional sense. The verdict of guilty of petty larceny reached upon the completion of the adjudicative phase of the trial on 7 January 1980 was stricken. Although several trial dates were thereafter set, Mines was never tried again,[4] the case finally being disposed of below by grant of the motion to dismiss the indictment. The court below did not reach the constitutional speedy trial issue which was before it. We remand so it may decide that issue upon receipt of such additional evidence as it may deem advisable. *See Squire v. State,* 280 Md. 132, 134, 368 A.2d 1019 (1977).

> *Order of 13 June 1980 dismissing the indictment vacated; case remanded for further proceedings; costs to be paid by appellee.*

---

[4] The numerous trial dates set from time to time never culminated in trial for a variety of reasons. The trial judge referred to the case "as a bureaucratic can of worms, and in some respects holds the whole system of jurisprudence up to ridicule."

We caution that nothing in this opinion is to be construed as any initimation whether or not Mines was denied a speedy trial in the constitutional context.